IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARRYL D. MOREFIELD,
    Plaintiff,

vs.                                              Case No.: 3:11cv161/WS/EMT

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

       This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court pertaining to review of administrative determinations under the Social Security Act ("the Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act to review the final, partially unfavorable determination made by the Commissioner of Social Security ("the Commissioner") of Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

       Upon consideration, this court concludes Plaintiff has failed to show that the Commissioner's final determination is not based on proper legal principles and substantial evidence. The court therefore recommends that the decision of the Commissioner be affirmed.

I.       PROCEDURAL HISTORY

       On April 13, 2006, Plaintiff filed applications for DIB and SSI in which he alleged a disability onset date of May 12, 2000; he later amended his onset date to February 14, 2005 (Tr. 18

at 1).[1]  Plaintiff's applications were denied initially and on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ").  The ALJ conducted the hearing on November 13, 2008.  On February 19, 2009, the ALJ issued a decision partially favorable to Plaintiff in which she found that Plaintiff had not been disabled through December 31, 2005, his DIB date last insured ("DLI"), but that Plaintiff became disabled beginning on July 1, 2007, making him eligible for SSI benefits as of the latter date (Tr. 18–32).  On February 18, 2011, the Appeals Council denied Plaintiff's request for review (Tr. 1).  Thus the February 19, 2009, decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal timely followed.

II.     FINDINGS OF THE ALJ

In her February 19, 2009, decision the ALJ made the following findings:

1)      Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2005.

2)      Plaintiff had not engaged in substantial gainful activity since February 14, 2005, his amended alleged onset date.

3)      Since the alleged onset date of disability, Plaintiff had the following severe impairments: degenerative disc disease, status post back surgeries, depression, and anxiety.

4)      Since the alleged onset date of disability, Plaintiff had no impairment or combination of impairments that met or medically equaled a listed impairment.

5)      Prior to July 1, 2007, the date Plaintiff became disabled, he had the residual functional capacity ("RFC") to perform light work, except that he could occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand for two hours total of an eight-hour day, alternating sitting and standing throughout the day at will; and had limited use of the lower extremities for pushing or pulling and operating foot controls.  He could never kneel, crouch, or crawl.

---

[1] All references to "Tr." refer to the transcript of the Social Security Administration record filed on July 20, 2011 (Doc. 8).  Additionally, the page numbers cited refer to those found on the upper right-hand corner of each page of the transcript rather than those assigned by the court's electronic docketing system.

6) Beginning on July 1, 2007, Plaintiff had the RFC to perform sedentary work, except that he could lift ten pounds; stand or walk two hours of an eight-hour day; sit up to six hours of an eight-hour day; occasionally handle, lift, reach, and finger with the left upper extremity; and understand, remember, and carry out short, simple tasks. Additionally, Plaintiff needed more frequent breaks of longer duration and more days off than ordinarily afforded in the workplace.

7) Since the alleged onset date of disability, Plaintiff was unable to perform past relevant work.

8) On the alleged disability onset date Plaintiff was forty-five years old, which is defined as a younger individual.

9) Plaintiff had at least a high school education and could communicate in English.

10) Prior to July 1, 2007, transferability of job skills was not material to the determination of disability. Beginning on July 1, 2007, Plaintiff was not able to transfer any job skills to other occupations.

11) Prior to July 1, 2007, based on Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Plaintiff could perform.

12) Beginning on July 1, 2007, based on Plaintiff's age, education, work experience, and RFC, there were not a significant number of jobs in the national economy that Plaintiff could perform.

13) Plaintiff was not disabled prior to July 1, 2007, but became disabled on that date and has continued to be disabled through the date of the decision.

14) Plaintiff was not under a disability within the meaning of the Act at any time through December 31, 2005.

III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence in the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence

or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     PLAINTIFF'S MEDICAL HISTORY

As an initial matter, the court notes that its discussion of the three hundred forty pages of medical evidence contained in the five hundred sixty-five page administrative file is relatively limited, for the following reasons.  The court's July 25, 2011, Scheduling Order (Doc. 9), in relevant part directed Plaintiff to file a memorandum that set forth his legal contentions and "specifically cite[d] the record by page number for factual contentions."  (*Id.* at 1, emphasis in original).  The court's Scheduling Order further instructed that the "[f]ailure . . . to support factual contentions with accurate, precise citations to the record will result in the contention(s) being disregarded for lack of proper development." (*Id.* at 2, emphasis in original).  In the section of Plaintiff memorandum titled "Medical History of Plaintiff," Plaintiff cites the medical record at pages 171, 172, 271, 277, 357, 373, and 458 only (*see* Doc. 10 at 3–9).  In the two-page "Argument" section of the memorandum (*id.* at 6–7), which immediately follows the medical history section, Plaintiff merely alludes to the page numbers previously referenced; he fails to cite any specific page numbers related to the medical

evidence (other than an improperly used "*supra*" reference) (*id.* at 7). As the only citations to the medical evidence provided by Plaintiff are to pages 171, 172, 271, 277, 357, 373, and 458 (*see* Doc. 10 at 3–9), these are the pages on which the court primarily focuses its outline of Plaintiff's medical history and its substantive review of his appeal. Nonetheless, in order to present a backdrop for Plaintiff's legal argument that the "medical evidence supports an earlier disability onset date" (*id.* at 6), the court also briefly discusses other relevant medical evidence, below, largely as the ALJ presents it in her decision.[2]

The record reflects that Plaintiff first saw treating physician Marie K. Ketchersid, M.D., in January 2005 (Tr. 371). Dr. Ketchersid noted Plaintiff's reported history of chronic lumbar pain with prior laminectomies in 1998 and 1999 and his unsuccessful efforts to return to work; she noted he was then attempting to obtain disability benefits (*id.*). Dr. Ketchersid advised Plaintiff to continue using Tylenol as needed for back pain and to consider obtaining a second opinion regarding additional back surgery (*id.*). In February 2005 Dr. Ketchersid noted Plaintiff's complaint of worsening back pain; she referred him to a neurosurgeon for further evaluation and recommendations (Tr. 368; duplicate at Tr. 171*[3]). The report of a March 10, 2005, MRI [magnetic resonance image] of Plaintiff's lumbar spine notes Plaintiff's history of prior back surgeries (Tr. 373*; final report at Tr. 172*). In the "Impression" section of the report it is noted that Plaintiff had mild degenerative changes at L3-4 and L4-L5 but no apparent root compromise (*id.*\*). Additionally, at L5-S1 Plaintiff had post-surgical and degenerative change with disc herniation and encroachment in the lateral foramen and likely nerve root compromise (*id.*\*). Writing more specifically with respect to the latter conditions in the "Findings" section of the report, the reviewing physician noted that at L5-S1 there was a broad based disc bulge to the left, with encroachment from osteophyte formation from the inferior end plate of L5. On the left side there was post-surgical change from

---

[2] The court does not include in the outline any significant discussion of Plaintiff's mental impairments of depression and anxiety, found by the ALJ to be severe after July 1, 2007, but not prior to that date, because in this appeal Plaintiff does not assert any grounds for reversal with respect to them. Nor, for the same reason, does the court address any of Plaintiff's numerous other medical complaints and conditions, including those that the ALJ found to be not severe. Thus the following discussion is limited to Plaintiff's severe impairment of degenerative disc disease of the lumbar spine, status post back surgeries.

[3] For ease of reference, where the page is one that Plaintiff has cited, the reference is followed by an asterisk.

Case No.: 3:11cv161/WS/EMT

a prior hemilaminectomy. There was also some ligamentum flavum and facet joint degenerative change and severe narrowing of the left foramen, with root compromise. The right foramen was widely patent with no definite nerve root compromise apparent (*id.\**). On May 18, 2005, Dr. Ketchersid referred Plaintiff to a pain management clinic and noted that Plaintiff recently had been seen by a neurosurgeon, who reportedly told Plaintiff that surgery was the only treatment available for his chronic back pain, an option in which Plaintiff stated he was not interested (Tr. 357\*). On May 30, 2005, Plaintiff presented to an emergency room complaining of back pain; he was diagnosed with acute myofascial lumbar strain, prescribed medications, and released (Tr. 214–19).

Pain management physician Parag A. Pandya, M.D., saw Plaintiff in July 2005 (Tr. 274–78). Plaintiff's physical examination appears to have been largely unremarkable, with the exception of decreased sensation in the lower left extremity; some painful restrictive range of motion in the lumbar spine, with tenderness in the lower lumbar spine paraspinal area and tightness/tenderness over the left sacroiliac joint; and positive straight leg raising test on the left side (Tr. 276). Plaintiff could ambulate without difficulty, displayed no trigger points, and had no motor deficits of the lower extremities (*id.*). Dr. Pandya noted that Plaintiff had undergone an MRI recently which showed osteophyte/disc complex at L5-S1 with neural foraminal narrowing, compression of the nerve, and prior surgery (Tr. 277\*). Dr. Pandya additionally noted that Plaintiff had tried conservative measures to control his pain but that nothing had helped him, and Plaintiff was unwilling to undergo further surgery (*id.\**). According to Dr. Pandya, the use of narcotic medications had been considered but in light of Plaintiff's acknowledged regular use of marijuana Dr. Pandya would not prescribe them. Given these circumstances, the only other option Dr. Pandya could offer was the use of a spinal cord stimulator, which would have to be implanted surgically (*id.\**).

On July 6, 2005, Dr. Ketchersid advised Plaintiff to continue to follow up with the pain management clinic as well as the neurosurgeon, noting her opinion that Plaintiff's present situation would not permit him to work (Tr. 353). Her treatment note also reflects that Plaintiff's current medications were aspirin for back pain and Zantac for gastric reflux (Tr. 352). Dr. Pandya saw Plaintiff for lower back pain on July 14, 2005, at which time he again stated that Plaintiff had "tried all the conservative therapies to control his pain, so far no success. He uses marijuana and that is

a limitation for us to use any narcotic medications on him." (Tr. 271*). Dr. Pandya further noted that Plaintiff was not interested in having a spinal cord stimulator implanted because "there were more restrictions and at this point with the family situation he cannot do it" (*id.\**). Dr. Pandya concluded by stating that he had nothing further to offer Plaintiff and that Plaintiff "will continue the way he is doing and whenever he is ready or his family is ready he will come and see us" (*id.\**).

On August 3, 2005, Dr. Ketchersid again noted that Plaintiff did not want to pursue surgical intervention at that point for his chronic back pain; his current medications, she again reported, were aspirin and Zantac (Tr. 348). On August 18, 2005, when Plaintiff reported that his back pain had worsened over the prior three days, Dr. Ketchersid prescribed a muscle relaxant and advised Plaintiff to go to the emergency room if his condition was not improved in a few days (Tr. 346); Dr. Ketchersid's records make no mention of a subsequent emergency room visit shortly thereafter. Dr. Ketchersid saw Plaintiff again on November 14, 2005, when she noted that his back pain was "stable" (Tr. 341). Likewise, on December 8, 2005 (which was just prior to Plaintiff's DLI of December 31, 2005), and January 3, 2006 (which was just subsequent to Plaintiff's DLI), Dr. Ketchersid described Plaintiff's back pain as "stable," and her notes for all three dates reflect that his current medications were aspirin and Zantac (Tr. 336, 338, and 341).

The administrative file contains additional medical records related to Plaintiff's back condition that are dated subsequent to his DLI of December 31, 2005. These include emergency room records from February 2006 and April 2006 when Plaintiff complained of back pain (and other conditions) (*see* Tr. 295–301; 302–07). A report of an August 2006 MRI of Plaintiff's lumbar spine, which was compared with the March 10, 2005, MRI (*see* Tr. 382–83), and states that the current study revealed progression of degenerative disc changes at the L5-S1 level with new endplace marrow signal abnormality as well as disc bulge. Marked disc desiccation was noted. There also was a small inferiorly extruded component which remained attached to the parent disc. Additionally, severe left neural foraminal narrowing was noted with possible impingement of the exiting nerve root, but the right neural foraminal canal appeared to be preserved (*id.*).

Nagy Shanawany, M.D., examined Plaintiff consultatively on February 9, 2007. Dr. Shanawany noted Plaintiff's history of back pain since 1998 and two prior surgeries (Tr. 384). Physical examination revealed, *inter alia*, decreased sensation in the left lower extremity, a positive

straight leg raising test, and some reduction in the range of motion of the thoracolumbar spine; Plaintiff's gait was normal, however, and he was able to squat and to heel-to-toe walk (Tr. 27, 386). Dr. Shanawany also noted that Plaintiff's current medications included Tylenol #3, an antacid, and aspirin (Tr. 384–85). At the administrative hearing, Plaintiff testified that his pain level prior to August 2007 ranged daily from six and eight on a ten-point scale (Tr. 544); Tylenol and aspirin did not relieve Plaintiff's pain but would "kind of take the edge of[f]" (Tr. 545).

Orthopedist Constantine A. Toumbis, M.D., examined Plaintiff on July 12, 2007 (Tr. 458*). Radiographs of the lumbar spine demonstrated degenerative disc disease and foraminal stenosis at L5-S1 with a slight anterolisthesis of L5-S1 (*id.\**). An MRI affirmed L5-S1 degenerative disc disease with disc bulging, foraminal stenosis, and dehydration of the disc (*id.\**). Dr. Toumbis' impression of Plaintiff's condition was post-laminectomy syndrome with left lower extremity-S1 pain as well as lower back pain (*id.\**). Dr. Toumbis opined that Plaintiff "essentially [had] exhausted his non-operative modalities" and advised Plaintiff that the surgical alternative at that time would be a "PLIF" [posterior lumbar interbody fusion] to restore disc height and to remove the offending disc (*id.\**). Plaintiff returned to Dr. Toumbis on July 27, 2007, complaining of continued back pain and left lower extremity pain that interfered with his activities of daily living and quality of life (Tr. 457). Plaintiff agreed to undergo the recommended PLIF procedure, and Dr. Toumbis performed it in August 2007 (Tr. 453–56). Although Dr. Toumbis' treatment notes indicate that Plaintiff's spinal surgery was initially successful (*see* Tr. 450–52), the record also reflects that as late as September 2008 Plaintiff continued to complain of severe back pain to numerous health care providers (*see* Tr. 412–27; Tr. 428–42; 460–501). Plaintiff also testified at the administrative hearing that his back pain had worsened following the August 2007 surgery (Tr. 529; *see also* Tr. 542–43).

V.   ISSUE PRESENTED

Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding the matter for further administrative proceedings (Doc. 10 at 8). In support of his prayer for reversal, Plaintiff presents only one ground for relief: that the ALJ erred in finding Plaintiff was not disabled prior to the expiration of his DIB insured status on December 31, 2005,

because the medical evidence "demonstrates that [Plaintiff's lower back] condition before his DLI is not substantially different than the evidence the ALJ used to approve the claim" as of July 1, 2007 (*id.* at 6).  The Commissioner responds that Plaintiff has failed to identify any evidence to support his contention that the ALJ should have found he was disabled prior to his DLI and that the evidence shows this contention is untrue (Doc. 12 at 5).  According to the Commissioner, his decision should be affirmed because Plaintiff had a fair hearing, Plaintiff's claims were considered in accordance with applicable statutes and regulations, and Plaintiff has failed to show that substantial evidence does not support the ALJ's determination (*id.* at 11).

VI.  DISCUSSION

At the administrative hearing Plaintiff testified that since 2000 sitting and standing had aggravated his severe back pain, forcing him to lie down frequently and preventing him from sleeping well (Tr. 527–28).  In response to the ALJ's question as to whether there any been any change in his condition after 2000, Plaintiff responded, "From 2000 to 2007 it got progressively worse where last August the second [2007], I had the major back surgery."  (Tr. 528; *see also* Tr. 542 ( Plaintiff's hearing testimony reiterating that between 2000 and 2007 his condition "progressively got worse")).  Although Plaintiff's testimony concerning the progressive worsening of his back pain is consistent with his medical records, the court concludes the evidence does not support a disability date of December 31, 2005.

Dr. Ketchersid's February 14, 2005, note—which Plaintiff cites—merely documents that Plaintiff had a history of chronic back pain, was status post multiple back surgeries, and was presenting with complaints of worsening back pain (Tr. 171*).  Similarly, Dr. Ketchersid's May 18, 2005, treatment note—on which Plaintiff also relies—only reflects Plaintiff's report that he had seen a neurosurgeon and rejected the idea of undergoing any further surgery (Tr. 357*).[4]  Neither of

---

[4] Plaintiff contends, in the medical history section of his memorandum, that the following statement by the ALJ is inconsistent with Dr. Ketchersid's May 18, 2005, treatment note (Doc. 10 at 4).  In the challenged passage, the ALJ states that "the claimant's subjective complaints of pain are inconsistent and although he does complain of severe back pain, other times it is not even mentioned in his treatment.  Likewise, there is a gap in the claimant's treatment history with little indication of objective evidence of the claimant's back impairment prior to the claimant's most recent surgery." (Tr. 27).

Contrary to Plaintiff's assertion, the ALJ's statement has support in the record.  Indeed, while the evidence reflects that Dr. Ketchersid's notes consistently report Plaintiff's history of chronic back pain, many of the notes show that Plaintiff did not complain of back pain when presenting to or contacting Dr. Ketchersid for treatment of other

these records, taken alone or together, contains objective medical findings which support a finding that Plaintiff was disabled as of December 31, 2005. Indeed, these treatment notes by Dr. Ketchersid, as well as her other treatment notes, contain almost nothing in the way of objective physical findings regarding Plaintiff's lumbar spine (*see* Tr. 327–75). Moreover, shortly prior to and after Plaintiff's DLI of December 31, 2005—specifically, on November 14, 2005; December 8, 2005; and January 3, 2006—Dr. Ketchersid described Plaintiff's back pain as "stable" and indicated that Plaintiff only took aspirin for this condition (Tr. 336, 338, and 341).

Dr. Pandya, in July 2005, considered prescribing narcotic pain medication for Plaintiff but refused to because of Plaintiff's acknowledged regular use of marijuana at the time (Tr. 271*, 277*). Thus it appears Plaintiff could have obtained narcotic pain relievers through Dr. Pandya (had he desired them and were he not regularly using marijuana), but Plaintiff evidently chose not to do so. Such action by Plaintiff does not suggest that he was experiencing disabling pain at that time. Moreover, although Dr. Pandya's physical examination of Plaintiff revealed some positive findings (such as decreased sensation in the lower left extremity, tenderness and restricted range of motion in the lower back, and positive straight leg raising test on the left side (Tr. 276)), Dr. Pandya also noted that Plaintiff could ambulate without difficulty, displayed no trigger points, and had no motor deficits of the lower extremities (*id.*).

Further, there is objective evidence of the significant worsening of Plaintiff's lumbar spine condition in the form of the August 2006 MRI (Tr. 172*, 373*).[5] The report of this study, which

---

conditions (*see*, *e.g.,* Tr. 327, 332, 334, 338, 341, 348, 351, 358, 360, and 369). Also, although Plaintiff complains about the ALJ's apparent reference to a lack of objective evidence in the record concerning Plaintiff's degenerative disc disease just prior to his August 2007 surgery, Plaintiff fails to identify where in the administrative file evidence concerning his back impairment during this time may be found and, other than Dr. Toumbis' records, the court did not locate any such evidence. For the period from May 2006 (when Plaintiff last saw Dr. Ketchersid) until July 2007 (when Plaintiff was examined by Dr. Toumbis) the file contains the assessments of several consulting or nonexamining physicians (*see generally,*Tr. 376–411). The court is unaware, however, of any medical records prepared by a treating medical source which show that the source provided Plaintiff with medical treatment for his back impairment during this period or, other than the August 2006 MRI, objectively evaluated the condition. Moreover, as the court has previously noted, Dr. Ketchersid's records covering the period from January 2005 to May 2006 contain few objective physical findings concerning Plaintiff's lumbar spine impairment (*see* Tr. 327–75).

[5] Although Plaintiff apparently quibbles with the ALJ's discussion of the March 10, 2005, MRI report in her decision (*see* Doc. 10 at 4), the court perceives no misstatement of, misrepresentation of, or improper reliance on this report by the ALJ. Rather, the ALJ loosely, but fairly, quoted the "Impression" section of the report, which effectively

was compared with the March 2005 study, states that the MRI revealed progression of degenerative disc changes at the L5-S1 level with new endplace marrow signal abnormality as well as disc bulge (Tr. 382–83). Also, severe left neural foraminal narrowing was noted with possible impingement of the exiting nerve root (Tr. 383). Dr. Toumbis' July 2007 written report also cites X-ray and MRI findings more severe than those seen in Plaintiff's medical records for the period prior to his DLI of December 31, 2005 (*see* Tr. 458*). On the basis of those findings and Dr. Toumbis' physical examination, as well as his view that Plaintiff had exhausted "all non-operative modalities," Dr. Toumbis recommended PLIF surgery at that time. Plaintiff has not pointed to a primary medical record from any other physician who, for the period prior to Plaintiff's DLI, made similarly severe objective findings or similarly recommended surgery. Although pain management specialist Dr. Pandya stated in July 2005 that Plaintiff had tried all conservative measures to control his back pain, without success, Dr. Pandya also indicated that a non-surgical option remained, that of giving Plaintiff narcotic pain relievers. Dr. Pandya refused to prescribe narcotics for Plaintiff, however, because of Plaintiff's admitted marijuana use.

In short, contrary to Plaintiff's argument, the evidence he cites concerning his lumbar spine condition—in particular the August 2006 MRI and Dr. Toumbis' July 2007 assessment and recommendation—is substantially different from the evidence on which the ALJ relied to find Plaintiff not disabled as of December 31, 2005. Accordingly, based on the medical record, outlined above, and for the reasons discussed, the court concludes that substantial evidence supports the ALJ's determination that Plaintiff was not disabled on December 31, 2005, his DLI for purposes of DIB, and that Plaintiff's disability commenced on July 1, 2007, shortly before Dr. Toumbis' examination, recommendation for the PLIF, and performance of the PLIF.

VII.   CONCLUSION

This court concludes Plaintiff has failed to show that the Commissioner's partially unfavorable decision is not supported by substantial evidence. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied

---

states in broader terms more particularized statements made in the "Findings" section.

Case No.: 3:11cv161/WS/EMT

improper legal standards, erred in making her findings, or that any other ground for reversal exists. The court therefore recommends that the Commissioner's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 16th day of May 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**